MARY STEVENS, Respondent, v. MISSOURI PA-CIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 7, 1910.

1. **RAILROADS: Persons on Track: Trespassers.** Persons, who walk upon and along a railroad track at a place where it is used generally by the public with the consent, forbearance and knowledge of the company, are not trespassers, and ordinary care must be exercised to look out for and protect them from injury.

2. **EVIDENCE.** The evidence considered and held insufficient to sustain the verdict.

Appeal from Jackson Circuit Court.—*Hon. Walter A. Powell,* Judge.

REVERSED.

*Elijah Robinson* for appellant.

(1) The court committed error in overruling defendant's demurrer to the evidence. Plaintiff was a trespasser on defendant's track, and it owed to her no duty except not to willfully or wantonly injure her.

R. S. 1899, sec. 1105; Frye v. Railroad, 200 Mo. 377; Carrier v. Railroad, 175 Mo. 470; Jackson v. Railroad, 157 Mo. 621; Kries v. Railroad, 148 Mo. 330; Hyde v. Railroad, 110 Mo. 272; Barker v. Railroad, 98 Mo. 50; Rine v. Railroad, 88 Mo. 392. The plaintiff was guilty of the grossest kind of negligence, which directly contributed to the accident, assuming that she was struck by the tender. Under the evidence in this case defendant's employees had a right to assume that the track was clear, and were not required to anticipate that any person was walking on it at the time plaintiff claims to have been hurt. Frye v. Railroad, 200 Mo. 400. The conceded physical facts show beyond question that plaintiff was not struck by the tender, as she claims she was. Petty v. Railroad, 179 Mo. 687; O'Keefe v. Railroad, 81 Mo. App. 386; Covell v. Railroad, 82 Mo. App. 180. (2) The trial court committed error in permitting plaintiff's witnesses to testify as to people walking on the track at places other than the one where plaintiff claims to have been injured; and also in permitting plaintiff's witnesses to testify as to people walking on defendant's track eight or ten years before the date of the alleged accident. (3) Where a verdict is against every reasonable probability, that might result from the evidence in the case, the inevitable conclusion must be that it was the result of partiality or prejudice on the part of the jurors, and a judgment based on such a verdict must be reversed. Jeans v. Morrison, 99 Mo. App. 208; Gage v. Trawick, 94 Mo. App. 307; Cook v. Railroad, 94 Mo. App. 417; Baker v. Stonebraker, 36 Mo. 345; Price v. Evans, 49 Mo. 396; Bautrain v. Railroad, 78 Mo. 44. (4) In view of the very slight injuries received by plaintiff, the verdict was so grossly excessive as to make it manifest that the jurors were influenced by partiality or prejudice, and not by a fair and impartial consideration of the evidence in the case. Baker v. Stonebraker, 36 Mo. 338; Spohn v. Railroad, 87 Mo. 84; Ice Co. v. Tamm, 90

Mo. App. 202; Chlanda v. Transit Co., 112 S. W. Rep. 249.  (5) The fact that a number of the jurors, during the progress of the trial, visited the locality where the accident is alleged to have occurred, for the purpose of inspecting the same, is of itself sufficient reason to entitle defendant to a new trial, and therefore the judgment ought to be reversed.  Thompson on Trials, sec. 2605, p. 1969, and cases there cited.  Ottman v. Railroad, 32 Kans. 419; Stampofski v. Steffens, 79 Ill. 309.

*Reed, Atwood, Yates, Mastin & Harvey* for respondent.

(1) The court committed no error in overruling defendant's demurrer.  It is a misconception of the rule of law that permits counsel to claim that in the case at bar the railway company owed any duty to this respondent, except not to willingly and wantonly injure her.  No case cited by appellant's counsel under point 1 can be said to be remotely in point save Frye v. Railroad, 200 Mo. 377, and that decision is so clearly explained and differentiated by two later decisions, one from each division of the Supreme Court, as to make the Frye case, rightly read, a strong decision in our favor.  As showing the clear right of respondent to go to the jury upon every question involved in this case, we cite.  Everett v. Railroad, 112 S. W. 486; Ahenfeld v. Railroad, 111 S. W. 95; Morgan v. Railroad, 159 Mo. 262.  We have some twenty cases collated in our brief, including, Reyburn, Eppstein, Carr, Engleking and other cases but in the Everett case, supra, all of the law bearing upon the subject is to be found and the strongest decisions are approvingly quoted from, including the decision of Cole v. Transit Co. by this court, 121 Mo. App. 612.  (2) It is finally claimed that a number of jurors visited the scene of the catastrophe during the trial and this is urged as a ground for

a new trial. Some foreign decisions and "Thompson
on Trials" are cited in support of this contention.
Counsel seemed to steer clear of Missouri law on this
point. This arrow from counsel's quiver falls harmless
for numerous reasons. (a) The general allegation in
the motion for a new trial in this case of misconduct
on the part of the jurors is insufficient to raise the
point. The constituent facts going to show misconduct
must be set out in the motion. 12 Ency. Pl. and Pr., p.
558. (b) Where misconduct of a juror is charged as
having occurred during trial, it must affirmatively ap-
pear that the complaining party did not know of the
misconduct before the jury retired to consider its ver-
dict. State v. Robinson, 117 Mo. 666; State v. Richard-
son, 134 Mo. 337; State v. Barrington, 198 Mo. 93.

BROADDUS, P. J.—This is a suit for damages for
an injury alleged to have been received by the plain-
tiff by being struck by the tender of one of defendant's
engines.

The facts, as detailed by the plaintiff, were sub-
stantially as follows: On the 12th day of March, 1906,
plaintiff left her home in the eastern part of the city
of Independence, about six blocks distant from defend-
ant's right of way, to go to the home of her brother-
in-law, Robert Hull. She did not go in the usual way
because she was not dressed suitably to be seen on the
street and because she apprehended that a depression
for a short distance of the way would be filled with snow
which would make traveling difficult. She started out
the back way of her home to an alley, along it to Wal-
nut street to the railroad and along the track to Lex-
ington street, where she stopped and looked back and
saw no engine or train. She noticed that from this
point ahead the snow between the rails was packed
down by tracks of persons who had been passing.
From Lexington street she proceeded on her way. She

reached a point in the vicinity where the track switches off to an electric light plant, when she again stopped, looked back and saw nothing. She proceeded a short distance and again looked back, discovering an engine close to her, and made a step or two to get off, but was struck and thrown out upon the right of way. At the point where she claimed she was struck, there were found footprints between the rails indicating that some one had turned, and there was an impression outside of the rails resembling that which could have been made by a human form. She stated that she was unconscious for a while and that, when revived, she got up and completed her journey. The track in the locality described was unfenced and outside of defendant's switch limits. The engine was running backward at the time and at a rate of speed of ten or twelve miles an hour. There was evidence tending to show that no warning was given of the approach of the engine to Lexington street. There was evidence to the effect that persons traveled on foot along that part of the track daily and that it had been so used for a number of years. Plaintiff was injured about the head, bruised above right shoulder and in the small of her back. She stated that the tender struck her on the right side of the head. The doctor's description of her injuries is as follows; two lacerated scalp wounds on the right side of her head, one about an inch above the ear and the other about three inches above the ear, one about an inch and the other an inch and a half long.

The defendant's evidence tends to show that the track of defendant from Walnut street to Lexington street had not been used as a way by pedestrians; that the engine in question was equipped with a pilot or cowcatcher on the rear end of the tank the same as on the front of the engine; that the engine was moved backward from the company's yards at Independence to Pixley, about ten miles distant, for the purpose of hauling freight from the latter to the former place;

that, as there was no turntable at Independence, the engine was run backward; that the cowcatcher attached to the tank extended over the rail on either side, and was as wide as the tank itself, and extended forward in the center about five or six feet from the tank, and was something less than a foot above the rails.

One of the contentions of defendant is that plaintiff, while walking on defendant's track at the place she was injured, if she was injured, was a trespasser and that, as such, defendant owed her no duty except not to have injured her knowingly. Reference is made to the case of Frye v. Ry. Co., 200 Mo. 377, wherein it is held that it was not sufficient to allege that plaintiff was, with the permission of defendant by long use and custom, walking on its tracks, etc. This case is different. It is alleged that the track in question had been for many years prior to the date of plaintiff's injury "used generally by the public between said points with the forbearance, consent and knowledge of said defendant." The law is that, in such instances, the defendant owes a duty to footmen "to use ordinary care to look out for them and ordinary care to protect them from being run down and maimed or killed." [Frye v. Ry. Co., supra, 400-401; Everett v. Ry. Co., 112 S. W. 486.] As there was evidence tending to show that the track on which plaintiff was struck was used generally by the public as a footpath with the knowledge and acquiescence of the defendant, it was a question for the jury. [Everett v. Ry. Co., supra.] These are the latest expressions of the Supreme Court on the subject and conclusive against the contention of defendant.

But defendant's main contention is that, under the facts as shown by the evidence, plaintiff could not have been struck by the tender and that whatever injuries she may have sustained was the result of some other cause.

151 App—20

As the cowcatcher preceded the tank and extended over the rails on each side and forward of the tank about five or six feet, and was something less than a foot above the rails; it is incomprehensible to see how she could have been struck by it before the tender reached her. And as there was no evidence of injury to her lower limbs, the inference is that, the injury to her head, shoulders and back could not have been made by coming in contact with either the cowcatcher or the tender. If she was struck at all, it must have been by the cowcatcher, of which there would most certainly have been some evidence of injury on her lower limbs, had the engine been moving at any rate of speed. Had the plaintiff been struck by the tender on the head while it was moving at the rate of ten or twelve miles an hour, the injury would have been much greater, if not fatal. Plaintiff stated that when she looked back and saw the engine close upon her she made one or two steps to get off the track before she was struck.

Referring to her evidence again we find that she stated in one place she was in the center of the track and at another place that, ''one foot was on one side of the rail and the other on the other.'' Had she been in either position it was inevitable that she must have been first struck by the cowcatcher of which there was no evidence whatever. Besides she would have been beyond the reach of the tender. Perhaps plaintiff should be credited with the belief that she was struck in the manner she claims she was. Owing to the peril of her situation and perhaps her confusion of mind created the belief that she was actually struck, as she found herself when consciousness returned thrown down upon the ground and injured.

Entertaining the view we do of the case, it is useless to discuss it further. It should be reversed.

*Johnson, J.,* concurs; *Ellison, J.,* dissents.